## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-228 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **DOROTHY MARIE MARSHALL** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

Although the defendant seeks to present herself as a successful business woman who is prepared to repay her victims, this portrait ignores the span of defendant's criminal conduct in this case, her criminal history, and her failure to take responsibility for her obligation to the victim of her previous fraud. Nonetheless, the defendant pleaded guilty promptly and has agreed to make a significant payment toward the consent order of forfeiture. Accordingly, the government moves the Court to give the defendant a reduction of three offense levels for her acceptance of responsibility. The government recommends that the defendant be sentenced to a term of imprisonment of 18 months, a term at the bottom of the applicable guideline range.

The criminal conduct for which defendant will be sentenced began in 1998 and lasted five years until 2003. The defendant began by embezzling from McKinney & Associates, where she worked as Office Manager. Over the course of her employment with the company until March 2001, the defendant forged the signature on at least 66 of the company's checks and diverted the

money to her personal use.  She defrauded the company of $86,357.22, and she hid her crime through a series of fraudulent invoices, forged checks, and falsified expense entries.  The defendant also attempted to conceal her crime by destroying cancelled checks returned to the firm by the bank.

In April 2001, the defendant began a new job as the Director of Financial Administration for TechWorks, a section 501(c)(3) non-profit organization.  Picking up where she left off with McKinney & Associates, the defendant began embezzling money from the charity until she was discovered and fired in 2003.  She forged the signatures on at least 52 checks and diverted the money to her personal use.  This time she defrauded the company of $106,524.44.  Again, she hid her crime through a series of fraudulent invoices, forged checks, and falsified expense entries.  Again, she also attempted to conceal her crime by destroying cancelled checks returned to the company by the bank.  When her scheme was unraveled, the government was able to trace more than $7,000 in proceeds to tickets the defendant had purchased in order to take a Caribbean cruise.

The defendant cannot claim that this criminal activity was an aberration.  Not only did the conduct span five years and involve two unrelated victims, but the defendant's conduct was carefully planned and executed.  During her criminal activity, the defendant forged many more than 100 financial documents.  More important, this is not the first time that defendant has been convicted of defrauding a charitable organization.  In 1993, the defendant was sentenced to 16 months imprisonment for defrauding the Marshall Heights Community Development Organization, where she worked as the Chief Accountant.  In that scheme, she embezzled the amount at least $58,070.65 for which she was ordered to pay restitution.  The defendant,

2

therefore, has had first hand experience that she should not steal from her employers and that she would face imprisonment for doing so.

The Presentence Report includes a fact which reveals an additional aspect of the defendant's conduct which is very troubling. In 1995, the defendant obtained a discharge in bankruptcy for the $10,000 balance of restitution which she owed to the non-profit Marshall Heights Community Development Organization. Although legal, this maneuver demonstrates that the defendant did not, and does not, take seriously the impact of her crimes. For instance, defendant used installment payments in order to buy $7,000 worth of tickets on a Caribbean cruise, but she did not want to spread her restitution to Marshall Heights over an installment plan. Similarly, rather than gather money to repay the victims in this case, the defendant obtained a large amount  money to invest in her own company.  She wants to treat the crimes she has committed as little more than loans which can be discharged in bankruptcy or amortized over time while she goes about business as if she had not done anything wrong. Crime is not the same as a bad investment.

Ms. Marshall's criminal history and criminal conduct in this case is so extensive that a sentence of incarceration must be imposed.  The government recommends a sentence of 18 months, the bottom of the guideline range.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No. 451058


_____
Thomas E. Zeno
D.C. Bar No. 348623
Assistant United States Attorney
Fraud and Public Corruption Section
555 Fourth Street, N.W.
Washington, D.C. 20530

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a copy of the foregoing Sentencing Memorandum was served via

electronic filing on this 21st day of October 2005 to:

Manuel J. Retureta, Esquire
601 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

_____
THOMAS E. ZENO
Assistant United States Attorney