UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-228 (RMU) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOROTHY MARIE MARSHALL | : | |

### GOVERNMENT'S REPLY SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply memorandum in aid of sentencing.

<u>Defendant's Acceptance of Responsibility was Not Exceptional.</u>

Although agreeing that defendant should receive a reduction of three offense levels for her acceptance of responsibility, the government does not agree that defendant's acceptance of responsibility is exceptional. A defendant's pre-indictment plea hardly qualifies as an unusual event in the criminal justice system. It is worthy of recognition, but it does not constitute exceptional behavior. Thus, defendant's argument really amounts to a request for a downward departure, or a non-guidelines sentence, because she has agreed to make a significant payment toward the consent order of forfeiture. As an initial matter, defendant's claim rings hollow because she has not paid even one dollar toward restitution in this case despite the fact that she has known of the criminal investigation since June 2003, more than two years ago. Moreover, according to counsel for defendant, approximately $75,000 will be paid against the forfeiture order by the date of sentencing. Not only is this only about 40% of the $192,881.66 that is owed

to the victims, but the payment is not being made very early in the process. The Guidelines specifically point out that acceptance of responsibility should be based upon the "voluntary payment of restitution prior to adjudication of guilt." § 3E1.1, Commentary Note 1 (c). Since it is past the time that the defendant has been adjudicated guilty because of her plea of guilty, there is nothing exceptional about the fact that she is making plans to repay the money she took from the victims of her crime. It is nothing less than her responsibility to do so. Trading the amount of restitution paid against the length of incarceration converts the criminal justice system into a mere collection process. The defendant should receive credit for her actions, but no exceptional circumstances exist.

More important, the defendant has not placed much of a priority on making her victims whole. During the past two years, the defendant has had access to considerable amounts of money. For instance, she obtained $130,000 which she paid toward the purchase price of $1,169,353.50 for the day care business. (PSR at ¶ 68.) Meanwhile, no money went to repay the victims. Similarly, none of her monthly income of $6,200 been sent to the victims on an installment plan of restitution. Instead, the defendant kept assets for herself until sentencing, more than two years after her crimes were discovered. There is nothing extraordinary about the defendant's conduct.

<u>Ownership of the day care center is not a basis for a lower sentence.</u>

When the Sentencing Commission evaluated the importance of most specific offender characteristics, it found them not ordinarily relevant to a sentence outside the guideline range. See generally § 5H1.1 <u>et seq</u>. This determination is not surprising. Although every defendant who stands before a judge for sentencing possesses unique offender characteristics, there is no

consensus among judges or other experts about how to evaluate the normal idiosyncracies of each individual's life. In this case, for instance, the defendant decided to open a day care business rather than make immediate restitution to the victims. Should that be a mitigating factor or an aggravating factor? Because courts have no uniform answer to this question, allowing this factor to be a basis for departure, either upward or downward, creates the potential for disparate sentences for similarly situated defendants. In order to avoid this unjust result, this factor should be applied only to adjust the sentence within the range.

The government submits that very little deference should be accorded defendants who seek a departure because of family ties or other similar responsibilities.

> Congress has directed the Sentencing Commission to 'assure that the guidelines and policy statements ... reflect the general inappropriateness of considering the ... family ties and responsibilities ... of the defendant. 28 U.S.C. § 994(e). Pursuant to this statutory mandate, the Commission has provided that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. U.S.S.G. § 5H1.6 p.s.

United States v. Dyce, 91 F.3d 1462, 1466 (D.C. Cir. 1996). While Dyce concerned only family ties and responsibilities, the Congressional directive expressed in 28 U.S.C. § 994(e) was not so limited. Congress confirmed "the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." Yet these are the factors which the defendant asks the Court to use as justification for a lower sentence.

Although the decision of the Court of Appeals which reversed the departure in Dyce is no longer binding because the Guidelines are advisory, the analysis of the decision remains

instructive. In particular, the Court said

> At the risk of stating the obvious, we note that the "extraordinary" can be defined only in relation to the "ordinary;" and at the risk of belaboring the obvious, we add that ordinary family responsibilities can be very great.

Id. In that regard, the defendant's request for a lower sentence because of her responsibilities for family and for the day care center is a two-edged sword. As a caregiver, the defendant should have been especially careful to avoid destructive behavior that could jeopardize the family relationship. Although trying to invoke the Court's sympathy for the impact which incarceration will have upon her family, the defendant ignores the inescapable truth that it is entirely her own behavior which has brought her before the Court for sentencing. Defendant Marshall could have – and should have – considered the consequences to her family before engaging in the elaborate frauds committed against McKinney & Associates and against TechWorks. In particular, the defendant knew from personal experience that she could be incarcerated for fraud. As the Court of Appeals sadly has noted:

> The unfortunate fact is that some mothers are criminals; and, like it or not, incarceration is our criminal justice system's principal method of punishment.

Dyce, id. at 1468.[1]

---

[1] Judge Wald's arguments about the importance of family circumstances in her dissent to denial of in banc rehearing for Dyce, id. at 1472, do not benefit defendant Marshall because Judge Wald made her comments in relation to a "first time low level drug offender ('mule')," id. at 1478. Defendant Marshall's reliance on cases affirming departures for various reasons, Marshall Sentencing Memo at 7 n.1, can be matched by the list of cases cited in Dyce for denial of departures. See, Dyce, id. at 1468. The significant aspects of this case are the defendant's criminal history, the extensive pattern of fraud in the instant offenses, and the amount of loss.

This analysis applies equally to the defendant's responsibilities as the owner of a day care center. The defendant did not open the day care center until 2004, well after she realized that she was facing possible incarceration for her recidivist behavior. The fact that she proceeded with the day care center is entirely her own decision. She hired 13 employees, and she should have trained them to run the business in the event she is incarcerated for 18 months (or less if she earns good time credit). If the defendant failed to plan ahead properly, she should not expect the Court to reward her recklessness with a discounted sentence.

Although the defendant dismisses it, the amount of loss caused by the defendant is an important factor – along with criminal history – in establishing the sentence under the Guidelines for a white-collar offender charged with fraud. The government submits that even though the Guidelines now are advisory, the amount of loss still should be an important factor in determining a fraud sentence. The sentencing scheme devised for white collar criminals in the Guidelines was developed by an independent body of experts. Their conclusion is sound that the larger the loss, the greater the likelihood that even a first time offender should face a jail term. In defendant Marshall's case, of course, her prior criminal history also demonstrates that she should be incarcerated.

Defendant Marshall's criminal history and criminal conduct in this case is so extensive that a sentence of incarceration must be imposed. The government recommends a sentence of 18 months, the bottom of the guideline range.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No. 451058


_____
Thomas E. Zeno
D.C. Bar No. 348623
Assistant United States Attorney
Fraud and Public Corruption Section
555 Fourth Street, N.W.
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing Reply Sentencing Memorandum was served via electronic filing on this 27st day of October 2005 to:

Manuel J. Retureta, Esquire
601 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

_____
THOMAS E. ZENO
Assistant United States Attorney